IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SUSAN G. HARING,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 11-825-DRH-CJP |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**REPORT and RECOMMENDATION**

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Susan G. Haring seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB)

**Procedural History**

Ms. Haring applied for DIB in March, 2008, alleging disability beginning on November 1, 2004. (Tr. 103). The application was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) Mitchell F. Stevens denied the application on May 19, 2010. (Tr. 16-21). Plaintiff's request for review was denied by the Appeals Council, and the May 19, 2010, decision became the final agency decision. (Tr. 1).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

**Issue Raised by Plaintiff**

Plaintiff raises only one issue, that is, that the ALJ erred in finding that she did not have a

severe mental impairment prior to her date last insured, December 31, 2006.

## **Applicable Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

In order to be eligible for DIB, a claimant must establish that she was disabled as of her date last insured. *Stevenson v. Chater*, **105 F.3d 1151, 1154 (7th Cir. 1997)**. It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, **630 F.3d 693, 699 (7th Cir. 2011)**.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir.**

1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).  The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that the claimant is capable of performing.  **See,** *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

     It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  **42 U.S.C. § 405(g).**  Thus, the question for the Court is not whether Ms. Haring was, in fact, disabled during the relevant time period, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** *Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).

     This Court uses the Supreme Court's definition of "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**  In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).  However,

while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Stevens followed the five-step analytical framework described above.  He concluded that plaintiff had not worked since the alleged date of onset.  She was last insured for DIB as of December 31, 2006.  At step two, he determined that plaintiff did not have any medically determinable physical or mental impairments through December 31, 2006.  Therefore, he concluded that she was not entitled to DIB.  (Tr. 16-21).

### The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation.  The following is a summary of some of the pertinent portions of the written record, focused on the issue raised by plaintiff.  As Ms. Haring has not raised an issue with regard to her alleged physical impairments, the Court will not review that evidence in any detail.

**1.      Agency Forms**

Ms. Haring was born in September, 1958, and was 46 years old on the alleged date of disability. (Tr. 128).  She was insured for DIB through December 31, 2006.  (Tr. 128).  She had previously worked as a secretary and as an assistant in a beauty shop.  (Tr. 135).

In a Disability Report, she stated that she had compartment syndrome in her foot and sciatica on the right side.  She said she had constant pain in her foot and back, and she was depressed.  She said that, due to a past substance abuse problem, she did not take pain medication.  (Tr. 144).

**2.     Evidentiary Hearing - April 14, 2010**

Plaintiff was represented at the hearing by an attorney.  (Tr. 27).

Ms. Haring testified that she worked as a secretary for her husband's construction company until the company was sold in 2000.  (Tr. 29-30).  In 2003 and 2004, she worked for her own company, which put upgrades on cell tower sites.  (Tr. 30).  She stopped working in 2004 due to a foot injury which required surgery.  (Tr. 31).  About a year later, she broke her other foot.  (Tr. 31).  She had low back problems from car accidents.  (Tr. 33).

She was not seeing a doctor for her physical problems at the time of the hearing because she had no insurance.  (Tr. 35).

With regard to her mental health, Ms. Haring testified that she had been on medication for mental health disorders "off and on" for 30 years.  (Tr. 36).  She started seeing a psychiatrist in February, 2008.  (Tr. 37).   She had no mental health treatment between 2004 and 2006.  During that period, her family doctor prescribed Zoloft for her.  The ALJ asked her how her depression affected her between 2004 and 2006.  She testified that she had "a lot of anxiety attacks, a lot of crying."  She did not want to go anywhere and did not care about anything.  (Tr. 37-38).  Her testimony was unclear about when the panic attacks occurred.  She said one was in 2006, and the other was before that, when she was wheeling her husband out of a radiation room.  (Tr. 39).

**3.     Mental Health Treatment Records**

Between July, 2002, and November, 2005, Ms. Haring was treated intermittently by a chiropractor, Dr. James Rehberger.  In July, 2008, he wrote a letter summarizing his treatment.  He stated that, in the past, Ms. Haring had "experienced psychiatric care associated with

attempted suicide and alcoholism." (Tr. 188).

Ms. Haring received primary health care at Greenville Medical Associates. Within the relevant time period, health care providers at that office made some notes regarding her mental health. On February 4, 2004, Zoloft was prescribed. (Tr. 234). In October, 2004, she was off Zoloft with "still obvious signs of depression." Wellbutrin was prescribed. (Tr. 223). On January 5, 2005, the pharmacy called the doctor's office to check if her prescription for Zoloft could be refilled. The note stated that she had not refilled her Zoloft since August, 2004, and had not refilled her Wellbutrin since October, 2004. (Tr. 222). At an office visit on January 10, 2005, Dr. Funneman noted that she had decreased motivation, irritability and difficulty sleeping. She wanted to restart Zoloft. She had good affect and eye contact, and denied suicidal thoughts. (Tr. 233). On January 24, 2005, she reported that she was feeling much better with Zoloft. However, her insurance would not pay for Zoloft, so she was to check with the pharmacy to see if Paxil or Prozac would be much cheaper. (Tr. 231). Ms. Haring was seen a number of times at Greenville during 2005 and 2006 for psoriasis and other physical complaints, but there are no further notes regarding her mental health. (Tr. 208-221).

On October 11, 2007, after her insured status expired, Dr. Funneman noted that her husband had been diagnosed with cancer, and she was depressed. He prescribed Celexa. (Tr. 207).

Ms. Haring's first visit with a psychiatrist was on March 27, 2008, almost 15 months after her insured status expired. She saw Dr. Judy Keeven on that date. She gave a history of depression beginning in her teenage years. She had been sexually abused by her father when she was a child. She attempted suicide when she was 21 years old. She had inpatient treatment for

alcoholism when she was 30.  In 1989 or 1990, she saw a psychiatrist because she had relapsed.  He prescribed Zoloft, which helped her.  She saw the psychiatrist 4 times, and, thereafter, her primary care physician continued to prescribe Zoloft for her.  She reported that "her depression has been quite severe since the fall of 2007."  In late 2007, her family doctor changed her from Zoloft to Lexapro, which she stopped taking "because there was no improvement in her mood."  Dr. Keeven diagnosed her with major depression disorder, recurrent, severe, without psychosis.  Her current GAF was assessed at 45.  Dr. Keeven prescribed Prozac for depression and Trazodone for insomnia.  She was to continue seeing a counselor named Mikaella for individual therapy.  (Tr. 249-252).

In August, 2009, Dr. Keeven filled out a questionnaire submitted to her by plaintiff's attorney.  Dr. Keeven said that she had diagnosed major depressive disorder, recurrent, severe, without psychosis.  For treatment response, Dr. Keeven wrote that she had "significant decrease in symptoms with medication and ongoing therapy support.  Some depression, mood instability and anxiety persists."  Dr. Keeven opined that it would be difficult for her to work full-time on a sustained basis due to stress.  She indicated that Ms. Haring had moderate limitations in the areas of  activities of daily living, social functioning and maintaining concentration, persistence or pace.  She had "frequent" episodes of decompensation.  (Tr. 353-354).   In October, 2009, plaintiff's counsel sent Dr. Keeven a letter asking her to indicate whether the limitations she identified in the questionnaire "have been in existence since the claimant's date last worked of 11/1/04 or prior to 12/31/06, her date last insured for Social Security benefits?"  Dr. Keeven checked "yes."  (Tr. 352).

In November, 2009, Dr. Keeven changed the diagnosis to Bipolar II - depressed.  (Tr.

376-377).

### 4. State Agency Consultant Assessment

In May, 2008, a state agency consultant completed a Psychiatric Review Technique form. He indicated that there was insufficient evidence to assess the severity of Ms. Haring's mental impairment as of December, 2006, the date last insured. (Tr. 253-266).

### 5. Consultative Examination

A psychologist, Dr. Klug, performed a consultative examination in March, 2009. Dr. Klug assessed her status as of the time of the examination, and offered no opinions regarding her mental impairments prior to December 31, 2006. (Tr. 267-276).

## Analysis

ALJ Stevens devoted two paragraphs of his six page decision to discussing plaintiff's alleged mental impairments. The discussion is located in the third and fourth full paragraphs on page 20 of the transcript. The ALJ first noted that the records from Greenville Medical Associates document complaints of irritability, decreased motivation and difficulty sleeping in January, 2005. She was placed back on Zoloft, and was feeling better within two weeks. In the next paragraph, he acknowledged that Dr. Keeven, who first saw plaintiff in March, 2008, "gave her professional opinion" that Ms. Haring's limitations resulting from her mental impairments had been present before her last insured date of December 31, 2006.

The Commissioner concedes that the evidence "appears to show severe depression" as of Ms. Haring's first visit to Dr. Keeven in March, 2008. See, Doc. 24, p. 9. He correctly points out that, as this is a DIB claim, the relevant issue is whether her depression was severe enough to be disabling before December 31, 2006. Obviously, ALJ Stevens rejected Dr. Keeven's opinion

that it was. Plaintiff argues that the ALJ did not sufficiently analyze Dr. Keeven's opinion or explain the weight he gave to it.

Dr. Keeven was a treating doctor and a specialist. ALJ Stevens was required to evaluate her opinion and determine what weight to give it considering the factors set forth in 20 C.F.R. §404.1527(d). An ALJ must give "good reasons" for discounting a treating doctor's medical opinion; if the opinion does not merit controlling weight, the ALJ must consider the "checklist of factors" set forth in §404.1527(d). **Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010)**, citing **Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010).**

ALJ Stevens offered no reason at all for rejecting Dr. Keeven's opinion that the limitations that she identified in August, 2009, were present before the critical date of December 31, 2006. He simply noted the doctor's statement.

Citing to Tr. 20-21, the Commissioner argues that the ALJ "indicated that he did not consider the evidence from Dr. Keeven relevant because it was not supported by any contemporaneous evidence from the insured period." Doc. 24, p. 11. However, that is not what the ALJ said. Presumably, the Commissioner is referring to the paragraph which immediately follows the two-paragraph discussion of Ms. Haring's mental impairment. The ALJ began the paragraph by saying that, for the period from November 1, 2004, through December 31, 2006, "there were no medical signs or laboratory findings to establish the existence of a medically determinable impairment." (Tr. 20). He then went on to discuss some of the medical evidence regarding plaintiff's alleged *physical* impairments, but did not mention her *mental* condition again. (Tr. 20-21).

Even if the ALJ's language could be stretched to apply to Dr. Keeven's opinion, whether

a medical opinion is supported by medical signs or laboratory findings is only one of the factors the ALJ is required to consider.  20 C.F.R. §404.1527(d).

The Commissioner's brief offers three reasons which he says could support rejecting Dr. Keeven's opinion.  He argues that the ALJ would have been justified in dismissing both the questionnaire and the "yes" answer to the November, 2009, question about timing because both the questionnaire and letter were drafted by plaintiff's attorney.  He also argues that her opinion was not supported by clinical findings or a narrative explanation, and was based solely on plaintiff's reports to the doctor.

The Commissioner's argument must be rejected because the reasons offered by the Commissioner were not relied upon by the ALJ in his decision.  See, **Campbell v. Astrue**, 627 F.3d 299, 307 (7th Cir. 2010); **McClesky v. Astrue**, 606 F.3d 351, 354 (7th Cir. 2010) **(It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision...")**.  The Seventh Circuit has "made clear that what matters are the reasons articulated *by the ALJ*." **Jelinek v. Astrue,** 662 F.3d 805, 812 (7th Cir. 2011)(emphasis in original).  Even if the reasons advanced by the Commissioner are good ones, if the ALJ has not articulated those reasons, the decision cannot be upheld on that basis.  Here, ALJ Stevens did not articulate any of the reasons advanced by the Commissioner.  In fact, he articulated no reasons at all.

In addition, the Seventh Circuit has disapproved of the first reason advanced by the Commissioner.  "[T]he fact that relevant evidence has been solicited by the claimant or her representative is not a sufficient justification to belittle or ignore that evidence." **Punzio v. Astrue,** 630 F.3d 704, 712 (7th Cir. 2011).

ALJ Stevens erred in failing to adequately analyze Dr. Keeven's opinion and explain why he rejected it. These errors require remand. It should be understood that this Court is not making any suggestion as to whether plaintiff is, in fact, disabled or as to what the ALJ's decision should be on reconsideration.

Remand of a social security case can only be ordered pursuant to sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand depends upon a finding of error, and is, itself, a final, appealable order. In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as rendered was correct. A sentence six remand is not an appealable order. See, **_Shalala v. Schaefer_, 509 U.S. 292, 296-298 (1993);  _Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan_, 195 F.3d 975, 978 (7th Cir. 1999).**

Here, a sentence four remand is appropriate. Upon remand pursuant to sentence four, judgment must be entered. **_Shalala v. Schaefer_, 509 U.S. 292, 297-298 (1993)**.

## Recommendation

This Court recommends that the Commissioner's final decision denying Ms. Haring's application for DIB be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this Report and Recommendation must be filed on or before **July 30, 2012**.

**Submitted:   July 11, 2012.**

>   s/ Clifford J. Proud
>   **CLIFFORD J. PROUD**
>   **UNITED STATES MAGISTRATE JUDGE**